IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CASSANDRA HILL                                                                                    PLAINTIFF

V.                                        Case No. 4:24-CV-00443-BBM

LELAND DUDEK, Acting Commissioner,
Social Security Administration[1]                                               DEFENDANT

## ORDER

## I.    INTRODUCTION

On December 9, 2020, Plaintiff Cassandra Hill ("Hill") filed a Title II application with the Social Security Administration for disability and disability insurance benefits. (Tr. at 54). On the same day, she filed a Title XVI application for supplemental security income. *Id*. In both applications, Hill alleged that she became disabled on February 1, 2016. *Id*. The applications were denied initially and upon reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") issued a written decision on April 21, 2023, finding that Hill was not disabled. (Tr. at 54-69). The Appeals Council denied Hill's request for review of the ALJ's decision on March 15, 2024. (Tr. at 38-44). The ALJ's decision now stands as the final decision of the Commissioner, and Hill has requested judicial review.

For the reasons stated below, the Court affirms the decision of the Commissioner.

---

[1] As of the date of this Order, Leland Dudek serves as Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Dudek is automatically substituted as the Defendant.

## II.    THE COMMISSIONER'S DECISION[2]

Hill previously filed Title II and Title XVI applications for disability insurance benefits and supplemental security income, which were denied on April 11, 2019. (Tr. at 54–55, 95–104). Hill did not move to reopen those applications, and the ALJ in this case declined to reopen those claims. (Tr. at 54). Accordingly, the first day of the relevant time-period for the determination of eligibility for benefits in this case is April 12, 2019, not the alleged February 1, 2016 onset date of disability.[3] *Id*.

Hill had not engaged in substantial gainful activity since April 12, 2019. (Tr. at 55–58, 68). The ALJ found that Hill met the insured status requirements of the Social Security Act through September 30, 2019. (Tr. at 57).

At Step Two, the ALJ determined that Hill has the following severe impairments: "depression, anxiety, and post-traumatic stress disorder (PTSD)." (Tr. at 57). At Step Three, the ALJ found that Hill's impairments did not meet or equal a Listing.[4] (Tr. at 57–58). Before proceeding to Step Four, the ALJ stated that Hill had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional mental restrictions: (1) she is able to perform simple, routine, and repetitive tasks involving 1-to-

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of  impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[3] Hill was 36 years old on the alleged onset date of disability. (Tr. at 68).

[4] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

2 steps with the ability to make simple, work-related decisions; (2) she can have no more than occasional interaction with co-workers and supervisors and none with the public; (3) she has the ability to adapt to simple or routine changes where such changes are few and infrequent; (4) she can perform work at a normal pace without high-rate production quotas; and (5) she should not be an integral part of a team. (Tr. at 60).

At Step Four, the ALJ determined that Hill is unable to perform any past relevant work. (Tr. at 67–69). At Step Five, the ALJ relied upon testimony from a Vocational Expert ("VE") to determine that, based on Hill's age, education, work experience, and RFC, she was capable of performing work in the national economy. (Tr. at 68–69)*.* Therefore, the ALJ concluded that Hill was not disabled. (Tr. at 69).

## III.    DISCUSSION

### A.    Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations

omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.    Hill's Arguments on Appeal

Hill contends that the ALJ erred as a matter of law by: (1) failing to account for Hill's "marked" limitations in her ability to interact with others in the RFC, (Doc. 8 at 9–13); and (2) failing to build an accurate and logical bridge between the evidence to the final RFC, *id.* at 13–15. The Court will address each of these arguments below.

### 1.    The RFC was supported by substantial evidence.

Hill argues that the ALJ limiting her to "occasional interaction with co-workers and supervisors" was not sufficient to account for her "marked" limitation in her ability to interact with others.[5] (Doc. 8 at 10). Specifically, Hill asserts that a limitation of "occasional interaction" is more consistent with a "finding of *moderate* social limitations," not marked limitations. *Id.* (emphasis in original). To support this contention, Hill cites a number of in-circuit district-court opinions. *Id.* at 10–11 (collecting cases). For the reasons

---

[5] Hill concedes that the ALJ's limitation of no interaction with the public does sufficiently account her for "marked" limitation in that area. (Doc. 8 at 10).

set forth below, however, the Court disagrees and finds that the RFC in this case was supported by substantial evidence.

By way of background, at Step Three, the ALJ conducted the required Psychiatric Review Technique ("PRT"), basing his conclusions on the medical opinion evidence and the balance of the evidence in the record as whole. (Tr. at 58–60). The PRT determines the claimant's functional impairments related to four mental domains. *See* 20 C.F.R. § 404.1520a(d), § 416.920a(d). Utilizing this framework, the ALJ found that Hill had moderate limitations in understanding, remembering, or applying information; marked limitations in interacting with others; moderate limitations in her ability to concentrate, persist, or maintain pace; and moderate limitations in her ability to adapt or manage herself. (Tr. at 58–59).

After establishing Hill's functional limitations at Step Three, the ALJ considered the opinions of two-state agency psychological experts in crafting an RFC, each of whom found Hill had no more than moderate limitations in mental functions. (Tr. at 65–66). Upon a review of the evidence, however, the ALJ decided that Hill had further limitations in interacting with others. (Tr. at 66, 117, 135). Additionally, the ALJ found partially persuasive a consultative examiner's opinion that Hill had a fair ability to interact and communicate. (Tr. at 67, 603–607). Lastly, the ALJ found less persuasive the opinion of Hill's counselor that she would be severely impaired in cognitive work functions because

it was inconsistent with Hill's ability to perform a variety of daily activities.[6] (Tr. at 65, 67, 594–595).

With the ALJ's analysis in mind, the Court returns to Hill's contention that the RFC for occasional interaction with coworkers and supervisors does not square with marked limitation in social interaction. On this point, the Court notes that cases from this circuit explain that occasional interaction with others *does* account for a claimant's *marked* limitation in social interaction. *See e.g.*, *Nunemacher v. Kijakazi*, No. 4:21-CV-427-DDN, 2022 WL 2952348 at *8–9 (E.D. Mo. July 26, 2022) (ALJ incorporated plaintiff's *marked* social functioning limitation by limiting plaintiff to no contact with the public and occasional contact with supervisors and coworkers); *Becherer v. Colvin*, No. 4:12-CV02356-ACL, 2014 WL 4230906 at *13–14 (E.D. Mo. Aug. 26, 2014) (ALJ incorporated findings of *marked* limitations in social functioning by limiting the plaintiff to no more than occasional interaction with supervisors, coworkers, and the public).[7]

For example, in *Nunemacher*, the claimant was found to be markedly impaired in all areas of social functioning. 2022 WL 2952348, at *8. There, the ALJ found an RFC identical to the one in this case, limiting Nunemacher to occasional interaction with

---

[6] Treatment notes show Hill to have reportedly been driving, helping to care for her baby granddaughter, she had intact and unimpaired self-care skills, intact domestic skills; she lives alone and can attend to laundry and household chores. (Tr. at 65).

[7] The Acting Commissioner cited *Sandford v. Saul*, No. 1:20-CV-00075-JAR, 2021 WL 168751, at *5 (E.D. Mo. Jan. 19, 2021), to support the conclusion that the RFC properly accounted for Hill's marked limitation in social interactions. (Doc. 10 at 7–8). In *Sandford*, however, the plaintiff only had "moderate limitations interacting with the public, interacting with co-workers, and responding appropriately to usual work situations and changes in a routine work setting" and had "moderate to marked limitations . . . interacting appropriately with supervisors." *Id.* at *4. Accordingly, *Sanford* is not analogous to the instant case where Hill has *marked*, not moderate, limitations in social functioning.

supervisors and coworkers and no interaction with the public, was appropriate. *Id.* The court agreed, as the ALJ considered the medical records and the fact that Nunemacher, though nervous and intense, was cooperative and "exhibited normal affect and emotional responsiveness." *Id.* Finally, the court acknowledged that Nunemacher had a prior instance of anger during a session; however, he otherwise was noted to be "pleasant cooperative, and engaging." *Id.*

Likewise, in *Becherer*, the claimant had difficulty with emotional regulation, but, as in this case, her impairments were fairly well controlled with medication; her exacerbations were situational in nature; and her symptoms improved over time. 2014 WL 4230906, at *14. The Court specifically noted that the medical evidence showed improving mental health; so, a limitation to occasional interaction with supervisors, coworkers, and the public was appropriate. *Id.* Although the evidence *could* have supported an opposite decision, the Eighth Circuit held that it was required to "affirm the ALJ's decision if it is supported by substantial evidence." *Id.* (citing *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).[8]

In the instant case, mental status examinations showed that Hill was cooperative, attentive, and had logical thought process. (Tr. at 62–65, 572, 605–606, 653–657, 837–838). Her exacerbations of difficulty with others were situational in nature, including

---

[8] The Acting Commissioner also cited to *Poppe v. Berryhill*, No. 16-CV-2084-LTS, 2017 WL 2971863, at *6 (N.D. Iowa July 12, 2017), *report and recommendation adopted*, 2017 WL 3581015 (N.D. Iowa Aug. 18, 2017), which held that "only occasional interaction with small groups of coworkers" and limiting claimant to "essentially . . . performing solitary work tasks" incorporated the finding that claimant has marked difficulties working in coordination with others. (Doc. 10 at 8).

deaths in the family and problems with romantic involvements.[9] (Tr. at 603). The record also supports the finding that medication improved her condition.[10] (Tr. at 688). Treatment was conservative (therapy and medication management), and Hill did not require inpatient hospitalization.[11] (Tr. 596). An ALJ must consider the record as a whole. The ALJ did just that here: he considered the medical evidence, medical opinions, and Hill's testimony, but he also took into account the above evidentiary factors, showing that Hill's interpersonal difficulties were not disabling.

While Hill cites cases from in–circuit district courts allegedly showing that occasional interactions are beyond her abilities, (Doc. 8 at 10–11), those cases are distinguishable. To begin, in *Frazer v. Comm'r of Soc. Sec.*, the court held that a marked limitation in the area of functioning is *not* supported by an RFC allowing "occasional contact with *the public*." No. 18-CV-2015-LTS, 2019 WL 6222288, at *4 (N.D. Iowa June 27, 2019), *report and recommendation adopted sub nom*, *Frazer v. Saul*, No. C18-2015-LTS, 2019 WL 3776996 (N.D. Iowa Aug. 12, 2019) (emphasis added). In the instant case, the ALJ limited Hill to *no* contact with the public. Accordingly, *Frazer* does not apply to Hill's situation.

---

[9] Situational stressors do not suggest an entitlement to disability benefits. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001).

[10] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

[11] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

Likewise, in *Wikstrom v. Colvin*, the ALJ specifically accounted for marked difficulty in interaction with the public by crafting an RFC for limited interaction with others and no direct contact with the public. No. C14-4032-MWB, 2015 WL 757823, at *11 (N.D. Iowa Feb. 23, 2015), *report and recommendation adopted*, No. C 14-4032-MWB, 2015 WL 3509281 (N.D. Iowa June 4, 2015). That is very similar to what happened in this case. The ALJ in Hill's case imposed a more restrictive limitation than that proposed by the state-agency psychological experts (marked rather than moderate limitation in interacting with others). (Tr. 58, 66). This shows the ALJ gave credit to Hill's testimony about difficulty interacting with others. Then, the ALJ limited Hill to no more than occasional interaction with coworkers and supervisors and no interaction with the public. (Tr. at 60).

The other cases Hill cites are also unpersuasive. Those cases merely hold that a claimant's *moderate* difficulty interacting with others may be addressed by an RFC for occasional interaction with others, without considering a marked difficulty. (Doc. 8 at 10–11); *see Potts v. Astrue,* No. 4:09-CV-64 CEJ, 2010 WL 889875, at *7 (E.D. Mo. Mar. 8, 2010) (ALJ's RFC determination that plaintiff was limited to no more than occasional contact with the public and her co-workers supported by *moderate* limitation); *Suter v. Berryhill*, No. 4:16-CV-00457-NKL, 2017 WL 1476156, at *10 (W.D. Mo. Apr. 25, 2017) (Same); *Wright v. Astrue*, No. 10-0883-SSA-CV-W-MJW, 2011 WL 6012935, at *3 (W.D. Mo. Dec. 1, 2011) (Same). Unlike the listed cases, however, Hill was limited from *any* interaction with the public. Accordingly, the ALJ's RFC accounting for her marked limitation was narrower than the cited cases gave for moderate limitations. Regardless, the

cases cited do *not* suggest that these limitations would be *insufficient* if the plaintiff had a marked limitation; merely that they were sufficient for a plaintiff with at least a moderate limitation.

The Court is sympathetic to Hill's argument; however, as Hill acknowledges, the Court may not reverse "merely because the evidence *could* support a contrary outcome." *Potts*, 2010 WL 889875, *5 (citing *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002)). As explained above, there was sufficient evidence to support the ALJ's finding that the RFC encompassed Hill's full range of mental impairments. Hill admittedly had a prior incident while working at Kroger during the alleged disability period where she threw scissors at another employee; however, much like in *Becherer*, that incident was an anomaly.[12] *See* (Doc. 8 at 12); (Tr. at 845). The ALJ found, based on the records, that Hill has not been "highly antagonistic, unresponsive, or hostile" when going to treatment. (Tr. at 59). Additionally, Hill was able to go into public and be around others. *Id.* Finally, the ALJ noted that Hill's wish to work at Kroger, in and of itself, made him question why, if Hill has such a fear of others, she purposefully sought employment in a "very public setting." *Id.* The ALJ also took into consideration that Hill's treatment was sporadic, conservative, and never required hospitalization. (Tr. at 62). Finally, the ALJ noted that Hill's impairments improved with medication and counseling. (Tr. at 63).

---

[12] Hill states that there was another incident when she was working at Newk's. (Tr. at 845). In that incident, she threatened to hit someone with a tray—Hill alleges that she meant to say it in her head, but "the words came out aloud." *Id.* There is no date given for this interaction. *Id.*

Accordingly, the Court finds that the ALJ's RFC limiting Hill to occasional interaction with co-workers and supervisors properly accounted for her mental impairments and was supported by the medical records and hearing testimony.

> **2.    The ALJ Built an Accurate and Logical Bridge Connecting the Medical Evidence and the RFC.**

Hill's second argument is that the ALJ failed to construct "an accurate and logical bridge" between the medical evidence and the RFC. (Doc. 8 at 13). Specifically, Hill argues that precluding Hill from being "an integral part of a team" in the RFC is unsupported by substantial evidence because: (1) "integral" in this situation is vague, *id.*; (2) the ALJ failed to properly articulate the reason for this limitation, *id.* at 14; and (3) the ALJ's errors could have caused different testimony by the VE, *id.* at 15. Again, the Court disagrees. For the reasons set forth below, the Court finds that the ALJ built an accurate and logical bridge connecting the medical evidence to the RFC.

First, as to "integral" being vague, the Court notes that cases from this Circuit have affirmed decisions limiting the plaintiff from being an "integral" part of a team without further definition. *See, e.g.*, *Brill v. Saul*, No. 3:20-CV-05064-NKL, 2021 WL 5157488, at *5 (W.D. Mo. Nov. 5, 2021) (holding that the limiting a plaintiff from being an "integral" part of a team was justified); *Willett v. Colvin*, No. C15-4036-LTS, 2016 WL 2770529, at *4 (N.D. Iowa May 13, 2016), *report and recommendation adopted*, No. C15-4036-LTS, 2016 WL 4582058 (N.D. Iowa Sept. 2, 2016) (same); *Carman v. Colvin*, No. C15-4059-CJW, 2016 WL 4153613, at *12 (N.D. Iowa Aug. 4, 2016) (same).

Second, the record supports the ALJ's basis for this limitation. As previously discussed, the ALJ credited Hill's complaints that she has "significant difficulty relating and working with supervisors, co-workers, and the public." (Tr. 63). The ALJ found that Hill had "some difficulty learning, recalling, and using information to perform work activities." *Id.* The ALJ further acknowledged that Hill "has some difficulty focusing attention on work activities and staying on task at a sustained rate." (Tr. at 59). The ALJ also recognized that Hill "has some difficulty regulating emotions, controlling behaviors, and maintaining well-being in a work setting." *Id.* All of these conclusions support a finding that Hill should not be an integral part of a team in a work setting.

Third and finally, as the ALJ did not err in limiting Hill from being an "integral" part of a team, and the ALJ cited sufficient evidence to explain such a limitation, Hill's argument that the hypothetical posed to the VE was flawed also fails.

## IV.    CONCLUSION

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC properly incorporated all of Hill's mental limitations. The finding that Hill was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

DATED this 2nd day of April, 2025.

_____
UNITED STATES MAGISTRATE JUDGE